UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------X

UMG RECORDINGS, INC., ET AL

        Plaintiffs,               <u>MEMORANDUM AND ORDER</u>

  -against-                 Civil Action No.
                                   CV-05-1095(DGT)

MARIE LINDOR

        Defendant.

-------------------------------X

Trager, J:

    Plaintiffs, a group of record companies, have brought this copyright infringement action against defendant.  This is one of many similar cases proceeding throughout the country in which groups of record companies have sued individuals in an attempt to combat and deter what they perceive as massive copyright infringement over the internet.  <u>See</u>, <u>e.g.</u>, <u>Atlantic Recording Corp. v. Heslep</u>, No. 06-cv-132, 2007 U.S. Dist. LEXIS 35824, at *2-3 (N.D. Tex. May 16, 2007); <u>Motown Record Co. v. DePietro</u>, No. 04-cv-2246, 2007 U.S. Dist. LEXIS 11626, at *2 (E.D. Pa. February 16, 2007); <u>see also</u> <u>MGM Studios, Inc., et al. v. Grokster, LTD., et al.</u>, 545 U.S. 913 (2005); <u>A&M Records, Inc., et al. v. Napster, Inc., et al.</u>, 239 F.3d 1004 (9th Cir. 2001).

    Two motions are before the court.  First, on April 26, 2007, defendant moved the court to exclude the expert testimony of Dr. Doug Jacobson ("Jacobson") on the ground that it is unreliable. Second, on August 28, 2007, plaintiffs moved the court to strike

defendant's affirmative defense of copyright misuse on the ground of legal insufficiency.  For the reasons stated below, defendant's motion to exclude plaintiffs' expert testimony is denied, and plaintiffs' motion to strike defendant's affirmative defense is granted.

## Discussion

### (1)

### Defendant's Motion to Exclude Expert Testimony

Plaintiffs intend to prove that defendant illegally downloaded and shared their copyrighted music using the file-sharing website KaZaA.  To do so, plaintiffs have proffered the testimony of expert witness Jacobson.[1]

Jacobson holds a Ph.D. in Computer Engineering with a focus on computer networking, and is certified as a Forensic Computer Examiner by the International Association of Computer Investigative Specialists.  He works as an Associate Professor of Electrical and Computer Engineering at Iowa State University, where he also serves as the Director of the Information Assurance Center and assists the school's police department with computer forensics.  In addition, he is the Chief Technical Officer and

---

[1]   In at least one similar case, a court has relied upon Jacobson's expert opinion.  See, Motown Record Co. v. DePietro, No. 04-cv-2246, 2007 U.S. Dist. LEXIS 11626, at *2 n.4 (E.D. Pa. Feb. 16, 2007) (citing Jacobson's expert report in a decision on a summary judgment motion).

founder of Palisade Systems, a computer security company specializing in network monitoring and filtering technologies. He has written several articles and made numerous presentations on the topic of computer networking.  On September 9, 2003, Jacobson testified before the United States Senate Judiciary Committee on the uses of peer-to-peer protocols.  Similar technology is at issue in this case.

Jacobson bases his opinion on investigative data obtained from two third-parties:  MediaSentry and Verizon Internet Services ("Verizon").  Plaintiffs, through the Recording Industry Association of America, have employed MediaSentry to browse peer-to-peer networks like KaZaA and gather evidence on users engaged in illegal downloading and sharing of copyrighted materials. See, e.g., Heslep, 2007 U.S. Dist. LEXIS 35824, at *2-3 (discussing the role of MediaSentry in a similar case). MediaSentry provided plaintiffs with evidence, such as screenshots and user logs, indicating that KaZaA user "jrlindor@KaZaA" had downloaded and made available for download copyrighted material.  Verizon was defendant's internet service provider during the alleged infringement and provided plaintiffs with information regarding defendant's IP address.

Jacobson is prepared to testify as follows: (1) defendant's internet account and computer were used to download and upload copyrighted music from the internet using the KaZaA peer-to-peer

network; (2) over 700 files were found on a computer using the
KaZaA user id "jrlindor@KaZaA"; (3) MediaSentry was able to
download eleven copyrighted songs from defendant; (4) 624 files,
most of which were copyrighted material, were available to the
general public to download from a computer using the IP address
assigned to defendant; and (5) at least some of the music found
on defendant's computer was downloaded from other internet users.

Defendant has moved <u>in limine</u> to exclude Jacobson's
testimony, alleging that his methods are unreliable.  Federal
Rule of Evidence 702 governs the admission of expert testimony,
and provides:

> If scientific, technical, or other specialized
> knowledge will assist the trier of fact to understand
> the evidence or to determine a fact in issue, a witness
> qualified as an expert by knowledge, skill, experience,
> training, or education, may testify thereto in the form
> of an opinion or otherwise, if (1) the testimony is
> based upon sufficient facts or data, (2) the testimony
> is the product of reliable principles and methods, and
> (3) the witness has applied the principles and methods
> reliably to the facts of the case.

Fed. R. Evid. 702.  As the proponents of the evidence, plaintiffs
bear the burden of establishing admissibility by a preponderance
of the evidence.  <u>See</u> <u>Price v. Fox Entm't Group, Inc.</u>, 499 F.
Supp. 2d 382, 386-87 (S.D.N.Y. 2007); <u>Israel v. Springs Indus.</u>,
No. 98-cv-5106, 2006 U.S. Dist. LEXIS 80863, at *8-9 (E.D.N.Y.
Nov. 3, 2006) (citing <u>Daubert v. Merrell Dow Pharms.</u>, 509 U.S.
579, 593 n.10 (1993)).

Under Rule 702, district courts function as gatekeepers,

4

"ensuring that an expert's testimony rests on a reliable foundation and is relevant to the task at hand." Daubert, 509 U.S. at 597; see also Kuhmo Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999) (applying Rule 702 and Daubert to testimony based on technical or other specialized knowledge).

The Supreme Court has suggested that it might be helpful for district courts to consider the following non-exclusive factors when determining the reliability of expert evidence: (1) whether the expert's opinions are tested or are testable; (2) whether the expert's conclusions have been published and subjected to peer review; (3) in the case of scientific technique, the potential or known error rate; and (4) whether the expert's conclusions have gained general acceptance in the relevant scientific community. Daubert, 509 U.S. at 593-94.

Nevertheless, "experience in conjunction with other knowledge, skill, training or education . . . [may] provide a sufficient foundation for expert testimony," and "[i]n certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." Advisory Committee Notes, 2000 Amendments, Fed. R. Evid. 702; see also Kumho Tire, 526 U.S. at 156 ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.").

As the Second Circuit has noted, district courts should

presume expert evidence is reliable.  Borawick v. Shay, 68 F.3d 597, 610 (2d Cir. 1995); see also Clarke v. LR Systems, 219 F. Supp. 2d 323, 332 (E.D.N.Y. 2002) ("[T]he Second Circuit's standard for admissibility of expert testimony is especially broad.") (collecting authority).  Indeed, "Daubert expressed . . . faith in the power of the adversary system to test 'shaky but admissible' evidence, and advanced a bias in favor of admitting evidence short of that solidly and indisputably proven to be reliable."  Id. (citing Daubert, 509 U.S. at 596).

First, as a threshold matter, Jacobson's expert opinion is highly relevant.  His testimony will explain the various technologies used to infringe copyrights over the internet, and will link an otherwise anonymous internet user, "jrlindor@KaZaA," with the defendant's internet account.  If believed, his testimony makes it more likely that defendant committed copyright infringement.  See Fed. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

Second, Jacobson's opinion is reliable enough to be admitted.  Jacobson bases his opinion on objective data provided by MediaSentry and Verizon, none of which required interpretation or conjecture.  MediaSentry merely documented the online file-

sharing activity of "jrlindor@KaZaA," and Verizon merely revealed
which IP addresses were assigned to defendant's account during
specified times.  See Fed. R. Evid. 703 (providing that an expert
may rely on facts or data "of a type reasonably relied upon by
experts in the particular field in forming opinions or inferences
upon the subject," even if the underlying facts and data may not
be independently admissible).  Using that data, Jacobson draws
from his experience to present a theory of how defendant used the
internet to infringe plaintiffs' copyrights.  His experience
qualifies him to opine on how file-sharing works, how it can be
used to infringe copyrights, and how seemingly anonymous internet
activity can be linked to defendant.  Jacobson's testimony
requires virtually no subjective analysis.

     Jacobson has testified that others in his field, conducting
a similar analysis, would have proceeded in the same way, and
that there is no other, more reliable method to do so.  Jacobson
Dep. at 149:12-151:18.  Defendant has not claimed otherwise,
except to argue that Jacobson's opinion should be excluded
because his method fails to comport with the four non-exclusive
Daubert factors.  The Daubert factors, however, were intended as
suggestions, and are not appropriate for every type of expert
testimony. Daubert, 509 U.S. at 593 ("Many factors will bear on
the inquiry, and we do not presume to set out a definitive

checklist or test.").[2]  In this case, Jacobson is doing no more than applying sound technological principals to specific facts. His experience qualifies him as an expert, his method is reliable, and his testimony should be admitted.  Defendant is free to use cross-examination or her own expert to address any perceived weakness in the credibility or accuracy of Jacobson's conclusions.

## (2)

## Motion to Strike the Affirmative Defense of Copyright Misuse

Defendant has raised the affirmative defense of copyright misuse, which alleges that by collectively bringing infringement lawsuits, plaintiffs are using their copyrights in an impermissibly anticompetitive manner.  Plaintiff has moved to strike defendant's affirmative defense of copyright misuse on the ground of legal insufficiency.

Federal Rule of Civil Procedure 12(f) provides that "within

---

[2] See also, MGE UPS Systems, Inc. v. Fakouri Electrical Eng'q, Inc., No. 04-cv-445, 2006 U.S. Dist. LEXIS 14142, at *5-8 (N.D. Tex. March 14, 2006) (admitting expert testimony in the field of computer forensics because there was a reliable basis for the witness's technical knowledge and opinion, without reference to the Daubert factors); Davison v. Eldorado Resorts LLC, No. 05-cv-0021, 2006 U.S. Dist. LEXIS 12598, at *10-13 (D. Nev. March 10, 2006) (same); Computer Associates Int'l v. Quest Software, Inc., 335 F. Supp. 2d 688, 693-94 (N.D. Ill. 2004) (admitting expert testimony from a computer scientist to compare programming code in a copyright infringement case because the expert's methodology was reliable, without reference to the Daubert factors).

20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).

In this case, defendant raised her copyright misuse affirmative defense for the first time in her amended answer, filed on March 20, 2006.  Plaintiffs moved to strike the defense on August 28, 2007, well beyond the twenty-day time limit suggested by Rule 12(f).  Nonetheless, plaintiffs' motion is timely because, as the Rule states, a court may entertain a motion to strike "at any time."  Id.; see also FDIC v. Pelletreau & Pelletreau, 965 F. Supp. 381, 390 (E.D.N.Y. 1997) (noting that court had authority to consider untimely motion to strike); Wine Markets Int'l, Inc. v. Bass, 177 F.R.D. 128, 133 (E.D.N.Y. 1998) (noting that court has authority to consider motion to strike at any time, and this discretion renders the 20-day rule unimportant).

Motions to strike, however, are strongly disfavored, and "will be granted only if: (1) there is no question of fact that might allow the defense to succeed; (2) there is no substantial question of law, the resolution of which would allow the defense to succeed and (3) plaintiff shows prejudice if the defense is allowed to stand."  Microsoft Corp. v. PTI, Inc., No. 01-cv-2018,

2003 U.S. Dist. LEXIS 5767, at *2-3 (E.D.N.Y. March 14, 2003) (denying a motion to strike copyright misuse as an affirmative defense).  Notwithstanding the disfavored status of 12(f) motions, however, courts have granted them to strike insufficient claims of copyright misuse.  See, e.g., Microsoft Corp. v. Computer Support Servs. of Carolina, Inc., 123 F. Supp. 2d 945, 956 (W.D.N.C. 2000) (striking affirmative defense of copyright misuse because defendant failed to allege facts that constituted a viable antitrust claim); Microsoft Corp. v. BEC Computer Co., 818 F. Supp. 1313, 1317 (C.D. Cal. 1992) (same); Microsoft Corp. v. Jesse's Computers & Repair, 211 F.R.D. 681, 685 (D. Fla. 2002) (same).

In general, copyright owners commit copyright misuse when they attempt to extend the scope of their copyrights and use them anticompetively in violation of antitrust laws.  See 4 Nimmer on Copyright § 13.09 (2007).  Some courts have held that a defendant can raise copyright misuse as an affirmative defense to an infringement action.  See, e.g., PTI, 2003 U.S. Dist. LEXIS 5767, at *2-3 (denying a motion to strike copyright misuse as an affirmative defense); Broadcast Music, Inc. v. Hearst/ABC Viacom Entertainment Services, 746 F. Supp. 320, 328 (S.D.N.Y. 1990) ("[T]he Court is persuaded by the more recent cases that the affirmative defense of copyright misuse is cognizable.").

Most examples of copyright misuse arise from tying

arrangements, anticompetitive contracts or licensing agreements, or the refusal to license to competitors.  See 4 Julian O. von Kalinowski et al., Antitrust Laws and Trade Regulation § 75.02 (2d ed. 2007).  These categories of misuse share one characteristic: the copyright owner has used its copyright to gain an impermissible competitive advantage.  The alleged anticompetitive behavior that plaintiffs are engaged in, however, fits into none of those typical categories.

Defendant alleges, at least nominally, that plaintiffs have engaged in copyright pooling, see Def.'s Br. at 7, which is a form of copyright misuse arising from agreements among copyright owners to pool their copyrights to enjoy a mutual benefit.  See, e.g., Alden-Rochelle, Inc. v. American Soc. of Composers, Authors & Publishers, 80 F. Supp. 888, 893-95 (S.D.N.Y. 1948) (finding an antitrust violation where copyright owners pooled their copyrights, creating the power to fix prices); see also, e.g., Broadcast Music, Inc. v. Columbia Broadcasting System, Inc., 441 U.S. 1, 10 (1979) (holding that ASCAP's practice of issuing blanket licenses should be subject to a rule of reason antitrust analysis).

Collectively bringing infringement suits, however, exhibits none of the hallmarks of anticompetitive copyright pooling, and cannot be classified as such.  Defendant has not alleged that plaintiffs have pooled their copyrights for a mutual benefit, nor

that they have abused their combined market power to the
detriment of copyright consumers.  See, e.g., Basic Books, Inc.
v. Kinko's Graphics Corp., 758 F. Supp. 1522, 1538-39 (S.D.N.Y.
1991) (holding that collective action to enforce copyrights did
not amount to copyright misuse because "[p]laintiffs' effort[] to
restrain competition . . . is simultaneously an effort to stop
[defendant] from infringing their copyrights.  Plaintiffs have
acted reasonably in so doing, not collusively for some illegal,
monopolistic purpose.").

        To the contrary, defendant frames the "sole" issue presented
by plaintiffs' motion as follows:

> [W]hat lawful, "procompetitive" explanation [do
> plaintiffs] have for their admitted copyright-pooling
> agreement . . . [W]hy six (6) different multibillion
> dollar, multinational corporations did in fact need to
> pool all their resources to join forces against a home
> health aide living in Brooklyn, and found it impossible
> to negotiate settlements with her and others like her
> other than pursuant to an impermeable, seamless joint
> front, apart from the obvious explanation that they did
> it to increase their leverage in bludgeoning defendants
> into a defenseless posture, where accepting an
> extortionate settlement demand would be their only
> means of averting financial ruin.

Def.'s Br. at 8 (emphasis in original).  Defendant, however, has
not cited a single case finding that even remotely similar facts
constituted copyright misuse, nor has she alleged any viable
anticompetitive aspects of the plaintiffs' agreement to
collectively bring infringement suits.  As in Basic Books,
"[p]laintiffs have acted reasonably, not collusively for some

12

illegal, monopolistic purpose." <u>Basic Books</u>, 758 F. Supp. at 1538-39.  Accordingly, defendant's claim could not prevail under any interpretation of the law or facts.

Moreover, allowing discovery to proceed on defendant's antitrust theory would prejudice plaintiffs.  See <u>PTI</u>, 2003 U.S. Dist. LEXIS 5767, at *2-3 (noting that motions to strike affirmative defenses should only be granted if plaintiff would be prejudiced otherwise).  Indeed, as the Second Circuit recently noted, antitrust discovery is particularly onerous.  <u>See</u>, <u>e.g.</u>, <u>Transhorn, Ltd. v. United Techs. Corp. (In re Elevator Antitrust Litig.)</u>, 502 F.3d 47, 50 n.4 (2d Cir. 2007) ("[P]roceeding to antitrust discovery can be expensive." (quoting <u>Bell Atlantic Corp. v. Twombly</u>, __U.S.__ , 127 S.Ct. 1955, 1966-67 (2007))).

## Conclusion

For these reasons, defendant's motion to exclude Dr. Jacobson's expert testimony is denied, and plaintiffs' motion to strike defendant's affirmative defense of copyright misuse is granted.


Dated:  Brooklyn, New York
        November 30, 2007


                        SO ORDERED:


                        _____/s/_____
                        David G. Trager
                        United States District Judge

14